**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ANDREW CLINTON CRUSE, JR.**                                      **PLAINTIFF**

**VERSUS**                                **CIVIL ACTION NO.  1:15cv172-RHW**

**MELVIN T. BRISOLARA,** *et al*.                                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court are three motions for summary judgment filed by the parties in this prisoner civil rights lawsuit filed June 3, 2015 by *pro se* plaintiff Andrew Clinton Cruse, Jr. under 42 U.S.C. § 1983.  Defendants filed motions [44] and [105] on October 30, 2015 and April 15, 2016, respectively; Plaintiff filed motion [68] November 24, 2015.  Also before the Court are Cruse's motions for default judgment [69] filed November 24, 2015, and for jury trial [102] and issuance of subpoenas [103], both filed April 6, 2016.  All motions are ripe for ruling. The parties consented to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73, and by order of February 22, 2016, the case was reassigned to the undersigned for all further proceedings.  [95]

### Facts and Procedural History

Since his arrest on February 23, 2015, Andrew Clinton Cruse, Jr. has been confined in the Harrison County Adult Detention Center (HCADC) on various felony charges including kidnaping, rape, sexual battery, and two counts of uttering forgery.  On June 3, 2015,[1] Cruse sued then Sheriff Melvin Brisolara and Harrison County, complaining he had been placed in the jail cellblock with convicted inmates although he had not yet been indicted on the charges for which he was confined, and that he sustained an injury in a May 12, 2015 incident when, during a

---

[1]Cruse's complaint is dated May 20, 2015; it was filed by the Clerk June 3, 2015.

shakedown at the facility, Officer Immel[2] fired a riot gun some 10-15 feet from him.  Cruse claims this frightened him and caused him a permanent partial hearing loss.  [1], [9]

Defendants' first summary judgment motion [44] urges dismissal of Cruse's complaint due to his failure to exhaust administrative remedies prior to filing suit.  In support of this motion, Defendants present the affidavit of HCADC grievance officer Jennifer Moran, to establish that HCADC has a three-level grievance procedure.  The procedure begins at Level I with the inmate's filing a grievance, to which the appropriate personnel respond.  If the inmate is not satisfied with the Level I response he may proceed to Level II which is to the Deputy Warden, and if not satisfied with the Level II response, he may proceed to Level III, the final step in the process, which is to the Warden.  [44-1, p. 4]  The initial (Level I) grievance is submitted from a computer kiosk, but Level II and Level III grievances are completed on paper forms only, which are forwarded to the proper respondent, with a copy stored in the office of the grievance officer.  [44-1]  Moran attached to her affidavit all Cruse's complaints and grievances related to the incident of May 12, 2015, which consist of medical complaints of ear pain, blurred vision, objections to being charged for medical care, and a request for medical diet [44-1, pp. 5-6, 11-16, 18-24], and grievances regarding the discharge of the gun in close proximity to him, and his being moved out of his cell [44-1, pp. 7-10, 17, 23-24].  These records include no Level II or Level III grievances filed by Cruse prior to filing the lawsuit.  In fact, Cruse dated his complaint May 20, 2015, just eight days after the incident of which he complains.  The complaint was postmarked May 26, 2015, received by the Clerk on May 27, 2015, and filed by the Clerk on June 3, 2015.  [1, pp. 4, 6]

---

[2]Cruse was allowed to amend his complaint to add Immel as a defendant on October 15, 2015 at the screening/omnibus hearing.

In response [53] to motion [44], Cruse repeats his allegation that he was injured, asserts that no policy allows a gun to be fired in the jail,[3] and complains that the grievance procedures argued by Defendants are from an outdated Inmate Handbook.  Cruse complains he has not been served a copy of the May 2015 edition of the HCADC Inmate Handbook.  [53, p. 2]  Defendants respond that the December 2013 edition of the Handbook applies to Cruse's case, since that edition was in effect on May 12, 2015 and remained in effect until the Handbook was updated May 27, 2015.  In any event, Chapter VII of the Handbook - the Inmate Grievance Program - remained the same in both those editions.  [62-1, ¶ 1]  In addition to the Handbook, HCADC grievance procedures are available to inmates in electronic form on the kiosk.  [62-1, ¶ 5] Cruse's memorandum [54] consists of conclusory allegations that Officer Immel's bringing a firearm into the facility violated jail policy and constituted a crime, and Cruse speculates that such action could create a danger to others if an inmate got the gun.  Cruse has presented no evidence that he completed the three-step grievance procedure required to exhaust his administrative remedies.  Instead, he alleges the circumstances of his case require no grievance procedure.  [54, p. 1]

On November 24, 2015, Cruse filed both a motion for summary judgment [68] and a motion for default judgment [69].  Cruse's Motion for default judgment [69] again challenges the grievance procedure at HCADC, argues the Inmate Handbook is outdated, and makes conclusory allegations that jail records are being altered to protect Defendants.  Despite the title Cruse gave this pleading, it bears no resemblance to a motion for default judgment and contains no cognizable grounds upon which a default judgment might be founded.  The Court will therefore

---

[3]Actually, Harrison County Sheriff's Department Policy Number 5.03 issued August 1, 2008 authorizes the use of special munitions - distraction devices.  [105-2, pp. 21-23]

deny Plaintiff's motion for default judgment. However, the Court has considered the pleading to the extent that it might be construed as additional response to motion [44].

In motion [68], Cruse seeks summary judgment for a claim that was "falsly publist (*sic*) saying Plaintiff had a pryor (*sic*) tinnitus and sensorireural (*sic*) hearing loss" before the May 12, 2012 incident at the jail. As "evidence" of this allegation, Cruse presents (1) a June 12, 2015 medical record which notes under past medical history "tinnitus and sensorireural (*sic*) hearing loss" and states, "Dr. advised that inmate needs hearing test" [68-1, p. 2]; (2) a June 23, 2015 audiological evaluation and report from Dr. Ross Deavours, who summarized:

> Speech tests reveal normal hearing for speech with good word recognition at conversational speech levels. Tests revealed an asymmetrical, sensorineural hearing loss. The right ear responses are normal through the speech frequencies with a mild to moderate high frequency loss. The left ear was retested for reliability and reveal normal hearing sloping to a mild to moderate loss in the higher speech frequencies and moderate in the high frequencies.

[68-1, pp. 3-4]; and (3) a May 12, 2015 nurse progress record which states Cruse was seen on the cellblock around 6:40 p.m., was very nervous from all the noise during a shakedown by security, had a 142/80 blood pressure, respirations of 21 and heart rate of 84. The record states he was brought to medical for observation and to calm down, and was cleared to return to the block at 7:10 p.m., feeling better and without any shaking noted. [68-1, p. 1] In response [73] to Cruse's summary judgment, the Defendants point out Cruse has presented no evidence showing Sheriff Brisolara, Officer Immel or Harrison County prepared any of these medical records[4] and since Cruse claims he sustained a hearing loss on May 12, 2015, he can hardly claim the reported history of hearing loss on the June 2015 records is false. The evidence produced by Plaintiff fails to show he is entitled to judgment as a matter of law against Defendants.

---

[4]Defendants state the documents were prepared by employees of Correctional Medical Associates, Inc.

Defendants' second motion for summary judgment [105] addresses the substance of Cruse's claimed constitutional violation.  In support of this motion, Defendants present excerpts from Cruse's deposition [105-1] and affidavits of HCADC Warden Evan Hubbard [105-2], Sergeant Robert Immel [105-4] and Sheriff Melvin Brisolara [105-5], as well as the December 2013 edition of the HCADC Inmate Handbook [105-3].  The exhibits establish these additional facts.

On May 12, 2015, Cruse was a pretrial detainee, classified as C-custody requiring close supervision.  [105-2, p. 13] Cruse admits in his deposition that he and the other inmates housed in B-Block B-Section were deemed dangerous or "violent offenders."  It is undisputed that there were 29-30 inmates housed in B-Section on May 12, 2015, and 15-16 of them were out of their cells, unrestrained in the dayroom at the time of the shakedown.  [105-1, pp. 8-9, 12-13], [105-4]

According to Immel's uncontradicted affidavit, SWAT was asked to assist and provide security in the shakedown in B-Block B-Section.  Immel was the first to enter the Section, taking one or two steps before deploying a Bore Thunder distraction device,[5] which discharges no munitions or projectiles, but is designed to create noise to use the element of surprise to quickly gain control of a situation.  [105-4], [105-1, p. 14], [105-2, pp. 15-16]  Neither Immel nor the other officers conducting the shakedown were wearing any ear protection when the shakedown took place.  [105-4]  Cruse testified he had no dealings with Immel prior to the May 12, 2015 shakedown, and he concedes that shakedowns are necessary in the facility to maintain a safe environment for both inmates and officers.  Cruse further testified he does not think Immel's action was intended to hurt him.[6]  [105-1, pp. 11, 15]  Cruse has admittedly received medical

---

[5]Cruse refers to the device as a shotgun or riot gun.

[6]In other pleadings, Cruse referred to Immel's action as "deliberate neglegence (*sic*)." [69, p.2]

attention for tinnitus and his claimed hearing loss since the incident.[7]  However, Cruse testified he had never had a hearing test before the incident, and that none of his treating physicians have affirmatively linked his hearing loss to deployment of the distraction device.  [105-1, pp. 2, 26]

Cruse testified Sheriff Brisolara was not present when the shakedown occurred, and that he sued the Sheriff and Harrison County because of the actions of their employees.  [105-1, pp. 22-24]  The Sheriff's affidavit establishes that he has had no contact with Cruse and was unaware of any risk of harm to Cruse's health, and confirms he was not present at the shakedown. [105-5]  Cruse's response [109] to motion [105] consists primarily of a repetition of allegations from his prior pleadings.

### Summary Judgment Standard

Rule 56, FED.R.CIV.P., requires that a motion for summary judgment be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party.  *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005).

The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  One seeking summary judgment must identify those portions of the pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact.  *Id.*, at

---

[7]Cruse describes his ear condition as feeling like there is water in his ears. [105-1, p. 21]

325.  If the movant fails to show the absence of a genuine issue concerning any material fact,

summary judgment must be denied, even if the non-movant has not responded to the motion.

*John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985).  However, once the movant carries

its burden, the burden shifts to the non-movant to show summary judgment should not be

granted.  The non-movant may not rest upon mere allegations or denials, but must set forth

specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary

documents or referring to evidentiary documents already in the record which show a genuine

issue as to a material fact exists.  *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494,

498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-

movant "must counter factual allegations by the moving party with specific, factual disputes;

mere general allegations are not a sufficient response.").  Conclusory allegations, unsubstantiated

assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy

regarding material facts.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990);

*Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082,

1086 (5th Cir. 1994).

Exhaustion of administrative remedies

       Exhaustion of administrative remedies through a jail or prison grievance system is a

jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983.  *Wright v.*

*Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  The Fifth Circuit takes "a strict approach" to the exhaustion requirement.

*See Johnson v. Ford*, 261 Fed.Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003)(quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The evidence before the Court shows that while Cruse filed several initial grievances for a myriad of complaints, he never fully exhausted the three-step grievance procedure regarding the May 12, 2015 incident of which he complains in this lawsuit before filing his May 20, 2015 complaint in this Court. Filing multiple first step grievances does not satisfy the obligation to exhaust administrative remedies. Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement – the grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. Because Plaintiff has presented no evidence that he ever completed all three steps of the administrative grievance process, the Court finds the motion for summary judgment for failure to exhaust administrative remedies [44] should be granted, and this case dismissed. Even if that were not the case, the Court would find summary judgment appropriate under Defendants' second motion [105].

Defendants' motion for summary judgment on the merits

The Court finds Cruse's complaint is of an episodic act rather than a general condition of confinement at HCADC,[8] but regardless of whether Cruse's claimed injury from the use of the distraction device during the May 12, 2015 shakedown is deemed an episodic act or a condition

---

[8]See *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

of confinement, the Court finds he has failed to present significant probative evidence to avoid summary judgment. A complaint about an episodic act requires the Plaintiff to demonstrate the Defendants acted with deliberate indifference to his needs. *Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir. 1996). To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994)). Deliberate indifference "is a stringent standard of fault" which requires proof that the actor "disregarded a known or obvious consequence of his action." *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Negligence by a jail officer does not violate a pretrial detainee's due process rights for purposes of a § 1983 action; even gross negligence is insufficient to establish a constitutional claim. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Hare*, 74 F.3d at 645 (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)). This is true whether Plaintiff is claiming Defendants used excessive force or that they failed to protect him during the shakedown.

Excessive force

A pretrial detainee's excessive force claim is analyzed in the same manner as a convicted prisoner's Eighth Amendment claim for use of excessive force. *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). To establish such a claim, Cruse was required to show Defendants used the distraction device "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 998 (1992), citing *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 1084-1085 (1986). It is undisputed that Immel and Cruse had never had any dealings with

one another prior to the May 12 shakedown, and that Immel deployed the distraction device immediately upon entering B-Block B-Section.  Immel's affidavit states the device was not intended to injure anyone, but to gain control of the situation by using the element of surprise. Cruse concedes shakedowns are necessary to maintain a safe environment for inmates and officers at the HCADC, and agreed it was in the best interests of the officers' safety to catch the inmates off-guard during a shakedown.  [105-1, pp. 11-13]  Cruse also testified he did not see Immel look at him, that he has no evidence that Immel knew where he was located when Immel entered the Section, and that he does not believe Immel used the device to intentionally hurt him. [105-1, p. 15]

Failure to protect

To prevail on a claim for failure to protect under 42 U.S.C. § 1983, Cruse had to show he was "incarcerated under conditions posing substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."  *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998).  Cruse has presented no evidence to undergird any such findings.  While courts have defined the ability to hear as a basic human need,[9] no evidence has been presented to show that any of the Defendants knew, much less deliberately ignored, that the use of the distraction device posed any inordinate danger to Cruse.  None of the officers involved in the shakedown wore ear protection, including Immel.  Furthermore, even if this were considered a general conditions of confinement case, the evidence before the Court indicates that the use of the device was reasonably related to legitimate penological interests in safety, discipline and order at the jail.  *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998); *Hare*, 74 F.3d at 644-48.

---

[9]*Gilmore v. Hodges*, 738 F.3d 266, 275 (11th Cir. 2013).

Municipal Liability

Cruse admits Sheriff Brisolara was not personally involved in the shakedown, and states he sued the Sheriff and Harrison County due to the actions of their employees. [105-1, pp. 22-24] Liability under § 1983 may not be based on *respondeat superior*, but only on a supervisor's own wrongful acts or omissions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978).  It must be based on more than the right to control employees, or simple awareness of employees' misconduct. *Leary v. Daeschner*, 349 F.2d 888, 903 (6th Cir. 2003).  The plaintiff is charged with the requirement of showing that the individual official was either personally involved in a deprivation of his rights or that the official committed wrongful acts which were causally connected to such deprivation. *See James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  "[P]ersonal involvement is an essential element of a civil rights action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983).

Neither Brisolara nor Harrison County is liable under § 1983 based on supervisory liability or *respondeat superior*.  *Monell,* 436 U.S. at 694 ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents").  Governmental entities such as the County are "responsible only for 'their own illegal acts;'" they are "not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 1359 (2011)(citations omitted).  To establish a foundation for a claim against the County, Cruse had the burden of coming forward with evidence that the constitutional violation he claims in this lawsuit, *i.e.*, the use of excessive force or failure to protect by jail officers' use of a distraction device, resulted from some official policy, custom or practice of the County, that the policy was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 690-692, 694; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Lawson v. Dallas*, 286

F.3d 257, 263 (5th Cir. 2002)(adding that the policy must reflect the municipality's deliberate indifference to the injury); *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) (equating moving force with a direct causal link between the policy and the constitutional deprivation). An official policy cannot be inferred from a single unconstitutional act. *Id.*, 237 F.3d at 581; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). The County can be held liable under § 1983 only if it subjected Cruse to a deprivation of rights or caused him to be subjected to such deprivation. *Connick*, 563 U.S. at 60, 31 S.Ct. at 1359. "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). Cruse was obligated to produce evidence that the allegedly unconstitutional conduct was "directly attributable to [the County] through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (footnote and citations omitted). Cruse has not presented evidence that his alleged injury was caused by a County custom, policy or practice, nor has he identified any custom, policy or practice of the County as the moving force behind the constitutional violation he alleges.

To the extent that Cruse claims liability of the County or Brisolara in his official capacity on a theory of failure to train employees, the United States Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). Cruse has made no such showing in this case. The Court finds Cruse's failure to present evidence to establish a

constitutional violation obviates the need to address Defendants' qualified immunity argument as to the claims against them in their individual capacities.  The Court's ruling renders moot Plaintiff's motions for jury trial [102] and for issuance of subpoenas [103].  Based on the foregoing, it is therefore,

       **ORDERED AND ADJUDGED** that:

       1.  Defendants' motion for summary judgment [44] based on Plaintiff's failure to exhaust administrative remedies is granted, and this case is dismissed for failure to state a claim upon which relief can be granted.  In the alternative only, Defendants' motion for summary judgment [105] on the merits is granted.

       2.  Plaintiff's motion for summary judgment [68] is denied.

       3.  Plaintiff's motion for default judgment [69] is denied.

       4.  Plaintiff's motion for jury trial [102] is held moot.

       5.  Plaintiff's motion for issuance of subpoenas [103] is held moot.

A separate judgment will be entered.

       **SO ORDERED**, this the 16th day of September, 2016.

            /s/ *Robert H. Walker*

            ROBERT H. WALKER
            UNITED STATES MAGISTRATE JUDGE